UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JEROME HAMPTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-cv-1607 (ABJ) |
| JAMES B. COMEY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Jerome Hampton brings this action against thirteen federal and state defendants, asserting fifteen federal, state, and common law claims arising out of his arrest, his transportation to and detention in the District of Columbia jail on June 19, 2007, and his subsequent imprisonment by the Federal Bureau of Prisons from September 2010 until July 2013. 2d Am. Compl. [Dkt. # 29]. Defendants Prince George's County, Maryland ("the County") and Melvin C. High, the former Chief of Police of Prince George's County (collectively, "the Maryland defendants"), have moved to dismiss plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss [Dkt. # 34] ("Defs.' Mot."). Because the Court finds that plaintiff has not alleged facts sufficient to state a claim under 42 U.S.C. § 1983 against the Maryland defendants for the deprivation of constitutional rights, the Court will grant the motion and dismiss the Maryland defendants from this case.

## BACKGROUND

The Court recites only those factual allegations pertinent to the Maryland defendants in resolving the pending motion to dismiss. Plaintiff alleges that on June 19, 2007, several FBI agents and an unidentified Prince George's County police officer arrested plaintiff at his home in

Maryland. 2d Am. Compl. ¶ 26. Plaintiff states that he asked to see an arrest warrant, but that the officer and FBI agents "refused to produce [it]." *Id.* ¶¶ 27–28. He claims that the FBI agents then entered plaintiff's home "without producing a search warrant," and that his "minor children were removed from house [sic] in handcuffs, and placed on their knee's [sic] outside the home" by the FBI agents. *Id.* ¶¶ 31–33. The FBI agents then searched plaintiff's home. *Id.* ¶ 35.

Plaintiff alleges that the FBI agents then transported him from Maryland to the District of Columbia jail without first taking him before a federal magistrate, a local judge, or a federal or state court, or providing him with an extradition hearing. *Id.* ¶¶ 36–41. In September 2010, plaintiff was committed to the custody of the Federal Bureau of Prisons in Morgantown, West Virginia, *id.* ¶¶ 8, 44, but his conviction was vacated by the D.C. Circuit in 2013. *Id.* ¶ 56; *see also United States v. Hampton*, 718 F.3d 978, 984 (D.C. Cir. 2013).

Plaintiff initiated this action on September 23, 2014, Compl. [Dkt. # 1], and after several procedural delays that are not relevant here, he filed a second amended complaint on March 30, 2015. 2d Am. Compl. He sues defendant High in his individual capacity, and the County in its official capacity. *Id.* ¶¶ 19, 21–23. The only claim against the Maryland defendants is set forth in Count XIV, in which plaintiff asserts that the Maryland defendants infringed his constitutional rights in violation of 42 U.S.C. § 1983 when they unlawfully arrested and detained him. *Id.* ¶¶ 108–24. Plaintiff claims that a 2004 "Memorandum of Agreement" between the Maryland defendants and the United States Department of Justice, *see* Ex. 1 to 2d Am. Compl. [Dkt. # 29-1], shows that the Maryland defendants agreed "not to violate citizens, U.S. Constitution Rights such as Plaintiff [sic]." 2d Am. Compl. ¶¶ 108, 113. Plaintiff contends that they "did continue to violate citizens U.S. Constitution Rights and that of Plaintiff [sic]." *Id.*

2

Specifically, plaintiff claims that the Maryland defendants, through their "inaction on June 19, 2007," violated:  1) plaintiff's and plaintiff's children's Fourth Amendment right to be free from unreasonable searches and seizures, *id.* ¶¶ 109–10, 114–15; 2) plaintiff's Fifth Amendment rights because "Plaintiff being an African-American was treated differently than a White American," *id.* ¶¶ 111, 116; and 3) plaintiff's Sixth Amendment right "to legal counsel in all criminal defendant matters."  *Id.* ¶¶ 112, 117.  Plaintiff further states that the Maryland defendants "formulated policy, and ha[ve] exercised that policymaking authority to generate improper practices, in the Prince George's County Police Department." *Id.* ¶¶ 109–12, 114–17.

On April 20, 2015, the Maryland defendants filed the pending motion to dismiss.  Defs.' Mot.  Plaintiff opposed the motion on May 14, 2015.  Pl.'s Resp. to Defs.' Mot. [Dkt. # 38] ("Pl.'s Opp.").  Defendants did not file a reply.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 566.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.*, quoting *Twombly*, 550 U.S. at 555.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

3

In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

In Count XIV, plaintiff brings a section 1983 claim for the deprivation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights against the Maryland defendants. 2d Am. Compl. ¶¶ 108–24. But plaintiff has failed to allege any facts tending to show that defendant High was in any way responsible for the constitutional violations of which he complains, and he has not pleaded facts sufficient to demonstrate that the County had a custom, policy, or practice that led to the alleged violation of his constitutional rights. Thus, the Court finds that plaintiff has failed to state a claim upon which relief can be granted, and Count XIV will be dismissed.

I. **Plaintiff has failed to allege facts sufficient to show that defendant High was individually responsible for the constitutional violations of which he complains.**

Section 1983 creates a private cause of action against a "person" who violates an individual's constitutional rights while acting "under color of any statute, ordinance, regulation,

4

custom, or usage, of any State . . . or the District of Columbia." 42 U.S.C. § 1983. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Only those who cause a violation of a right secured by the Constitution are liable." *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012), citing *Iqbal*, 556 U.S. at 676.

Plaintiff states that he is suing defendant High in his individual capacity. 2d Am. Compl. ¶¶ 19, 21 ("Each of the above defendant's [sic] is sued individually and in his/her individual capacity."). But he has not offered any facts whatsoever showing defendant High's personal involvement in the events surrounding his arrest, transportation, and imprisonment. Although the second amended complaint is filled with conclusory allegations and legal conclusions about defendant High, *see id.* ¶¶ 113–17, the only somewhat factual claims are that defendant High "was responsible for the lives and property of the Citizens of Prince George's County," *id.* ¶ 19; that he signed the Memorandum of Agreement with the Department of Justice, *id.* ¶ 113, and that he "formulated policy, and has exercised that policymaking authority to generate improper practices, in the Prince George's County Police Department." *Id.* ¶ 114–17. Not one of these allegations demonstrates that defendant High was personally involved in the incidents of June 19, 2007, or that he deprived plaintiff of his Fourth, Fifth, Sixth, or Fourteenth Amendment rights. Thus, these allegations are plainly insufficient to state a claim under Rule 12(b)(6) that defendant High "cause[d] a violation of a right secured by the Constitution," *Elkins*, 690 F.3d at 564, "through [his] own individual actions." *Iqbal*, 556 U.S. at 676.

Plaintiff also cannot base his section 1983 claim against defendant High on the conduct of the unnamed police officer who allegedly was present during his arrest. Even assuming that

the police officer committed a constitutional violation, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. "A supervisor who merely fails to detect and prevent a subordinate's misconduct, therefore, cannot be liable for that misconduct." *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004). Rather, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.*, quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Plaintiff has offered nothing to make such a showing here. He claims that defendant High's "inaction on June 19, 2007" violated his constitutional rights, 2d Am. Compl. ¶¶ 114–17, but he offers no affirmative link between defendant High's alleged inaction and the claimed unconstitutional conduct by the unnamed County police officer. *See Int'l Action Ctr.*, 820 F.2d at 27. And the second amended complaint plainly falls short of alleging any fact that would tend to show that defendant High "had actual or constructive knowledge of past transgressions or that [he was] responsible for or aware of 'clearly deficient' training" of the unnamed officer. *Id.* at 28. Thus, plaintiff's section 1983 claim against defendant High will be dismissed.

II. **Plaintiff has failed to allege facts sufficient to show a custom, policy, or practice that resulted in the constitutional violations of which he complains.**

Like an individual government official, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). So plaintiff's section 1983 claim against the County cannot be based on the actions of the unidentified officer alone. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. As the Supreme Court has explained, "[t]he 'official policy' requirement

6

was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S 469, 479 (1986).

In assessing whether a plaintiff has established municipal liability under *Monell*, a court must first determine whether there has been a constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003), citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120. Assuming that a plaintiff has alleged a deprivation of his constitutional rights, "then the court must determine whether the complaint stats a claim that a custom or policy of the municipality caused the violation." *Id.*, citing *Collins*, 503 U.S. at 120, and *Monell*, 436 U.S. at 694. "[T]he plaintiff must establish that the official policy or custom itself is 'the moving force of the constitutional violation.'" *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986), quoting *Monell*, 436 U.S. at 694.

Here, Count XIV against the County must be dismissed because the second amended complaint is devoid of any allegation that the unidentified officer's alleged misconduct grew out of a custom, policy, or practice of the County. In fact, other than the claim that the County "exercised [its] policymaking authority to generate improper practices," 2d Am. Compl. ¶¶ 109–12, the second amended complaint contains no facts showing what plaintiff believes the County actually did. He offers the conclusory allegations that the County "continue[d] to violate citizens U.S. Constitution Rights and that of Plaintiff [sic]," *id.* ¶ 108, that its "inaction on June 19, 2007, violated Plaintiffs, U.S. Constitutional Rights [sic]," and that the County "exercised . . . policymaking authority to generate improper practices." *Id.* ¶¶ 109–12. But plaintiff does not identify any "improper practices" – he does not allege any facts tending to show that the County improperly trained the unnamed officer, that it customarily encouraged, permitted, or ignored

constitutional violations committed by its officers, or that its official policies or practices permitted or fostered such violations – and he does not proffer any factual scenario concerning how any alleged policy or practice resulted in the incident of June 19, 2007. Thus, the Court finds that he has failed to state a section 1983 claim against the County.

To the extent that plaintiff's claim against the County is based on its "inaction on June 19, 2007," *see* 2d Am. Compl. ¶¶ 109–12, that claim also fails. "[A] city's inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to 'deliberate indifference towards the constitutional rights of persons in its domain.'" *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000), quoting *City of Canton v. Harris*, 489 U.S. 378, 388–89 & n.7 (1989). Plaintiff has alleged no facts that would permit this Court to find that the County exhibited deliberate indifference toward the protection of individual constitutional rights through its customs or practices, let alone that such indifference led to the alleged constitutional violations.

In opposing defendants' motion, plaintiff emphasizes the significance of the 2004 Memorandum of Agreement between the County and the Department of Justice. Pl.'s Opp. at 3. He argues that "[b]oth Defendants . . . signed the Agreement, knowing there has been a pattern or practice of conduct by law enforcement officers that deprives individuals of rights, privileges or immunities secured or protected by the Constitution or laws of the United States." *Id.* He states that "on the face of the Memorandum Agreement, we find that Prince George's County and Prince George's County Police Department was engaged in a pattern and Practice of conduct which violated individuals rights, guaranteed by the U.S. Constitution." *Id.* at 3–4.

But as another court in this District observed, the mere existence of a Memorandum of Agreement does not necessarily give rise to a section 1983 claim:

8

> [T]he Court must reject plaintiff's lame attempt to transform the mere existence of a [Memorandum of Agreement] into a policy or custom of deliberate indifference, for the MOA does not provide any evidence of specific instances of the District's failure to discipline, and if anything, it demonstrates not deliberate indifference, but rather, an effort to improve its practices and procedures relating to investigation and discipline of police misconduct.

*Byrd v. District of Columbia*, 297 F. Supp. 2d 136, 140 (D.D.C. 2003). Here, plaintiff's claim is entirely conclusory – even if one assumes that he has properly alleged a constitutional violation, he has failed to offer any facts that would support a finding that the County's failure to train or its policies and practices led to the alleged constitutional deprivations. And even if the Memorandum of Agreement might supply some evidence of municipal policy or custom prior to its execution in 2004, plaintiff fails to allege any affirmative link between that practice and the injuries he allegedly sustained in 2007. Without any such link, the Court does not find that plaintiff has stated a claim for municipal liability under *Monell*, and it will dismiss Count XIV.

## CONCLUSION

Because plaintiff has failed to state a plausible section 1983 claim for the deprivation of constitutional rights against either defendant High or the County, the Maryland defendants' motion to dismiss the second amended complaint will be granted.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 21, 2015