# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEROME HAMPTON, )| |
| )| |
| Plaintiff, )| |
| )| |
| v. )| Civil Action No. 14-cv-1607 (ABJ) |
| )| |
| JAMES B. COMEY, *et al.*, )| |
| )| |
| Defendants. )| |

## MEMORANDUM OPINION

Plaintiff Jerome Hampton has brought this action against nine named federal defendants and one unnamed federal defendant, asserting fourteen federal, state, and common law claims arising out of his arrest on a federal warrant in Maryland on June 19, 2007, and his subsequent imprisonment by the Federal Bureau of Prisons in West Virginia from September 2010 until July 2013.[1]  2d Am. Compl. [Dkt. # 29].  The named federal defendants – Federal Bureau of Investigation ("FBI") Director James B. Comey, FBI Special Agents Timothy J. Ervin, Brian Mumford, Alyson Samuels, Tucker G. Vanderbunt, and Ryan M. Pardee, Warden of the Federal Bureau of Prisons ("BOP") facility in Morgantown, West Virginia Anne Mary Carter, Morgantown official Dr. Waters, and BOP Director Charles E. Samuels, Jr. – have moved to dismiss plaintiff's claims pursuant to Federal Rules of Civil Procedure 8 and 12(b)(1), (2), (3), (4), (5), and (6).  Defs.' Mot. to Dismiss [Dkt. # 39] ("Defs.' Mot.").

---

[1]    Plaintiff's claims against two state defendants – Prince George's County, Maryland, and Melvin C. High, the former Chief of Police of Prince George's County – were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 21, 2015.  *Hampton v. Comey*, No. 14-CV-1607, 2015 WL 5568641 (D.D.C. Sept. 21, 2015).  Plaintiff's claims against a third state defendant, an unnamed female Prince George's County police officer referred to as "Mary Doe," will be addressed in this Memorandum Opinion.

Plaintiff's criminal conviction was ultimately overturned on legal grounds, so he is understandably chagrinned about his encounter with the criminal justice system. But because the Court finds that it lacks subject matter jurisdiction over several of plaintiff's common law tort claims, it lacks personal jurisdiction over several defendants, venue is improper in this District, the federal defendants were not properly served with process, many of plaintiff's claims are time-barred, and plaintiff has failed to state a plausible claim for relief against any of the federal defendants, the motion to dismiss will be granted. For many of the same reasons, the Court will also dismiss plaintiff's claims against the two unnamed Doe defendants. Thus, this matter will be dismissed in its entirety.

## BACKGROUND

### I.     Factual Background

Plaintiff alleges that on June 19, 2007, several FBI agents and the unnamed Mary Doe defendant arrested him at his home in Maryland. 2d Am. Compl. ¶ 26. He states that he asked to see the arrest warrant, but the FBI agents and defendant Doe "refused to produce [it]." *Id.* ¶¶ 27–28. He claims that the FBI agents then entered his home "without producing a search warrant," and that his "minor children were removed from house [sic] in handcuffs, and placed on their knee's [sic] outside the home" by the FBI agents. *Id.* ¶¶ 31–33. The FBI agents then searched plaintiff's home. *Id.* ¶ 35. Plaintiff alleges that the agents transported him from Maryland to the District of Columbia jail without first taking him before a federal magistrate, a local judge, or a federal or state court in Maryland, or providing him with what he refers to as an "Extradition Hearing." *Id.* ¶¶ 36–41.

After he had been convicted at trial, *see* Jury Verdict Form [Dkt. # 575], *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14, plaintiff was committed to the custody of the Federal

Bureau of Prisons in Morgantown, West Virginia in September 2010.  2d Am. Compl. ¶¶ 8, 44.

He alleges that in July 2013, while in custody, he was treated for a nerve issue by Dr. Waters and

the unnamed John Doe defendant, and "was left in pain" after being treated.  *Id.* ¶¶ 47–50.  Plaintiff

was released from the custody of the Bureau of Prisons in July 2013, after his conviction was

vacated by the D.C. Circuit.  *Id.* ¶¶ 8, 56; *see also United States v. Hampton*, 718 F.3d 978, 984

(D.C. Cir. 2013).

Based on those events, plaintiff initiated this action on September 23, 2014.  Compl. [Dkt.

# 1].  He has brought a variety of claims against the federal defendants:  constitutional claims for

violations of his Fourth, Fifth, Sixth, and Eighth Amendment rights pursuant to *Bivens v. Six*

*Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); common law

tort claims for malicious prosecution, conspiracy to abuse process, false light invasion of privacy,

infliction of emotional distress, and false imprisonment; and a common law expungement action

based upon the allegedly unlawful maintenance of records.  2d Am. Compl. ¶¶ 57–129.

## II.    Procedural History

On February 3, 2015, the Court consolidated this case with a related civil action, and it

directed plaintiff to file a single, consolidated complaint advancing all of his claims against all

defendants.  Order (Feb. 3, 2015) [Dkt. # 15].  Because it did not appear that plaintiff had properly

served any of the defendants with the original complaint, the Court ordered plaintiff to serve the

amended consolidated complaint on all parties, and to provide adequate proof of service for each

defendant.  *Id.*  After several procedural delays which are not relevant here, plaintiff filed the

second amended consolidated complaint on March 30, 2015, 2d Am. Compl. [Dkt. # 29], and filed

service materials for some defendants on April 6, 2015.  Affs. of Service [Dkt. # 32].

On June 17, 2015, the federal defendants filed the pending motion pursuant to Federal Rules of Civil Procedure 8 and 12(b)(1), (2), (3), (4), (5), and (6). Defs.' Mot.; Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 39] ("Defs.' Mem."). Plaintiff, who is represented by counsel, opposed the motion on July 21, 2015, Pl.'s Resp. to Defs.' Mot. [Dkt. # 43] ("Pl.'s Opp."), and the federal defendants filed a reply on August 24, 2015. Defs.' Reply. to Pl.'s Opp. [Dkt. # 45].

## STANDARD OF REVIEW

### I.    Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l*

*Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.     Personal Jurisdiction

It is the plaintiff who bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). In order to survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). To establish that personal jurisdiction exists, the plaintiff must allege specific acts connecting the defendant with the forum. *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). A plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

## III.    Venue

"In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008), quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002). The court may consider material outside of the pleadings. *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002), citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). "Unless there are pertinent factual disputes to resolve, a challenge

to venue presents a pure question of law." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

## IV.     Service of Process

Under Rule 12(b)(5), the plaintiff bears the burden to establish that he has properly effectuated service. *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). When the defendant challenges the sufficiency of service, the plaintiff "must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Id.* (citations omitted). Service by certified mail may be insufficient if the summons and complaint are not addressed to a specific and proper party and if there is no confirmation of receipt by a person authorized to accept service. *See Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 132 (D.D.C. 2012); *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 88–89 (D.D.C. 2004). If a plaintiff does not meet his burden to show proper service of process, the Court may dismiss the complaint without prejudice for ineffective service of process. *See* Fed. R. Civ. P. 12(b)(5); *Simpkins v. D.C. Gov't*, 108 F.3d 366, 368–69 (D.C. Cir. 1997).

## V.     Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation

of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Defendants have moved to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(1), (2), (3), (4), (5), and (6). Defs.' Mot. at 1. The second amended complaint contains many duplicative and overlapping claims, and it is not clear in some instances which claims are asserted against which defendants and on what basis. Thus, while the Court finds that many of the counts could be dismissed on any one of several independent grounds, it will proceed to examine all of the reasons for dismissal raised by the federal defendants, in order to ensure that the Court's analysis is comprehensive and that the viability of each of plaintiff's claims is resolved in its entirety.

I.      **The Court lacks subject matter jurisdiction over Counts II, III, and IV pursuant to the Federal Tort Claims Act, insofar as those claims arise out of libel or slander.**

In Counts I through V, plaintiff asserts tort claims against FBI agents Timothy J. Ervin, Brian Mumford, Alyson Samuels, Tucker G. Vanderbunt, and Ryan M. Pardee (the "FBI agent defendants").   2d Am. Compl.   ¶¶ 57–77.   Specifically, plaintiff brings claims of malicious prosecution, conspiracy to abuse process, false light invasion of privacy, infliction of emotional distress, and false imprisonment, based on the allegations that the agents brought false charges against him, arrested him, caused his detention and imprisonment, and damaged his reputation.   *Id.*

The Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679, commonly referred to as the Westfall Act, "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."   *Osborn v. Haley*, 549 U.S. 225, 229 (2007); *see also Majano v. United States*, 469 F.3d 138, 139 (D.C. Cir. 2006) ("Under the terms of the Westfall Act, federal employees are immune from state tort lawsuits for money damages if their tortious conduct occurred while they were acting within the scope of their employment."), citing 28 U.S.C. § 2679(d)(1), and *Haddon v. United States*, 68 F.3d 1420, 1422–23 (D.C. Cir. 1995).   The immunity is triggered if the Attorney General or his delegate certifies "that 'the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'"   *Jacobs v. Vrobel*, 724 F.3d 217, 219–20 (D.C. Cir. 2013), quoting 28 U.S.C. § 2679(d)(1).   "Upon certification, the employee is dismissed from the action, [and] the United States is substituted as the defendant."   *Id.* at 220, citing 28 U.S.C. § 2679(d)(1)–(2).

Here, the United States has filed a Westfall Act certification averring that the FBI agent defendants "were acting within the scope of their employment as employees of the United States at the time of the alleged incidents" at issue in this case, *see* Certification [Dkt. # 39-6], and

plaintiff has not challenged it. Thus, plaintiff's tort claims against the FBI agent defendants will be dismissed, and the United States will be substituted as the defendant in Counts I through V.

After a Westfall Act substitution, "the suit is governed by the Federal Tort Claims Act ('FTCA') and is subject to all of the FTCA's exceptions for actions in which the Government has not waived sovereign immunity." *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009), citing *Osborn*, 549 U.S. at 230. Should one of the exceptions to the FTCA apply, the Westfall Act certification "converts the tort suit into a FTCA action over which the federal court lacks subject matter jurisdiction and has the effect of altogether barring plaintiff's case." *Id.*; *see also Majano*, 469 F.3d at 139.

One exception applicable here is that "the FTCA exempts from its waiver of sovereign immunity any claim 'arising out of' libel or slander." *Edmonds v. United States*, 436 F. Supp. 2d 28, 35 (D.D.C. 2006), citing 28 U.S.C. § 2680(h). "Courts consistently have held that claims for 'false light' invasion of privacy are barred by the libel and slander exception." *Id.*, citing *Johnson v. Sawyer*, 47 F.3d 716, 732 n.34 (5th Cir. 1995), and *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir. 1986); *see also Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997) ("[T]he *sine qua non* of a false light claim is giving 'publicity' to a matter which places the plaintiff 'before the public' in a false light. Libel and slander similarly involve publication of false statements about another.") (internal citations omitted). Similarly, courts have found that claims for infliction of emotional distress, where they are based on allegedly defamatory comments made by prosecuting officials to the press, are also excepted from the FTCA's sovereign immunity waiver. *See, e.g.*, *Loumiet v. United States*, 65 F. Supp. 3d 19, 26–27 (D.D.C. 2014). In other words, "[c]laims, no matter how they are described by a plaintiff, based on dissemination of defamatory

information pertaining to a federal investigation are barred by the libel/slander exemption." *Edmonds*, 436 F. Supp. 2d at 35, citing *Kugel v. United States*, 947 F.2d 1504 (D.C. Cir. 1991).

Aspects of plaintiff's conspiracy to abuse process and infliction of emotional distress claims and the entirety of his false light invasion of privacy claim are barred by the libel and slander exception, because they are premised on plaintiff's allegation that the FBI agent defendants caused him to be portrayed publicly in a false and defamatory light.  He alleges that the FBI agent defendants conspired to abuse process by filing charges against him "for the purpose of creating false narratives about Plaintiff that harmed Plaintiff's, business interests and his family," 2d Am. Compl. ¶ 61; that they took actions that resulted in plaintiff's portrayal in a "highly offensive" "false light," including the publication of articles about him in the Washington Post, *id.* ¶¶ 63–69; and that they inflicted emotional distress when they "created false narratives and filed malicious criminal charges in order to harm" him.  *Id.* ¶ 72.

To the extent that these claims "aris[e] out of" allegedly defamatory statements and conduct by the FBI agent defendants, they are barred by the libel and slander exception to the FTCA.  28 U.S.C. § 2680(h); *see also Loumiet*, 65 F. Supp. 3d at 26–28 (dismissing the plaintiff's FTCA claims that "allege injuries arising out of the statements Plaintiff alleges Defendant made to the press," because "these claims arise out of allegedly defamatory statements and the United States has not waived its sovereign immunity as to such claims");[2] *Edmonds*, 436 F. Supp. 2d at 35–37 (dismissing the plaintiff's claim for negligent infliction of emotional distress where "[t]he action

---

2       In *Loumiet*, the court declined to dismiss the plaintiff's false light claim because it "was based on the dissemination of *private* facts that would not otherwise have become public and not on the defamatory aspect of these facts." 65 F. Supp. 3d at 27 (internal quotation marks omitted). Here, in contrast, plaintiff does not allege the disclosure of any private facts about him, and his false light claim is premised on the notion that the FBI agent defendants engaged in conduct that caused him to be portrayed in a false and defamatory light based solely on the fact that he was investigated and convicted for a drug offense. *See* 2d Am. Compl. ¶¶ 63–69.

of the Government of which [the plaintiff] complains is the FBI's disclosure of information, allegedly resulting in injury to her reputation, economic harm, and emotional distress"). Pursuant to section 2680(h), the Court finds that it lacks subject matter jurisdiction over those claims.

## II. The Court lacks personal jurisdiction over defendants Carter and Waters.

Defendants assert that the Court may not exercise personal jurisdiction over "defendants that are not from the District of Columbia and who do not have sufficient minimum contacts with this district." Defs.' Mem. at 10. Although defendants do not specify, this appears to refer to defendants Anne M. Carter and Dr. Waters, who plaintiff alleges are employees of the BOP facility in Morgantown, West Virginia. *See* 2d Am. Comp. ¶¶ 9, 14.

Plaintiff bears the burden of establishing that this Court possesses personal jurisdiction over each defendant. *Crane*, 894 F.2d at 456. Plaintiff does not contend that defendants Carter and Waters are residents of the District of Columbia, and the Court cannot infer as much from the allegations of the second amended complaint. *See* 2d Am. Compl. ¶¶ 9, 14. Thus, for the Court to have personal jurisdiction in the District of Columbia over non-resident defendants Carter and Waters, plaintiff must show that "jurisdiction is applicable under the state's long-arm statute," and that "a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

The District of Columbia Long Arm statute provides, in part, that a court may exercise personal jurisdiction over an individual as to claims arising from a person's

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

11

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; [or]

(5) having an interest in, using, or possessing real property in the District of Columbia.

D.C. Code § 13-423(a)(1)–(5).

Plaintiff does not claim that defendants Carter or Waters contracted to supply services in the District, or that they have an interest in, use, or possess real property in the District.  He alleges that they "have their principle [sic] place of business around the Washington D.C., area," and that they work for the Federal Bureau of Prisons, "which is Head Quartered in the Washington D.C., area."  2d Am. Compl. ¶¶ 51–52, 55.  But "the mere fact that [a non-resident defendant] is an employee of the BOP, the headquarters office of which is in the District, does not render [the defendant] subject to suit in [his or her] individual capacity in the District of Columbia."[3]  *Scinto v. BOP*, 608 F. Supp. 2d 4, 7–8 (D.D.C.) (alterations in original), *aff'd*, 352 F. App'x 448 (D.C. Cir. 2009), quoting *Walton v. BOP*, 533 F. Supp. 2d 107, 112 (D.D.C. 2008); *see also Stafford v. Briggs*, 444 U.S. 527, 543–45 (1980) (holding that absent minimum contacts other than those arising from federal employment, a court may not exercise personal jurisdiction over a federal

---

3      For that reason, plaintiff's request for jurisdictional discovery on defendants' contacts with the District of Columbia, *see* Pl.'s Mot. to Stay Case Pending Completion of Limited Jurisdictional Disc. on Defs.' Mot. [Dkt. # 42], will be denied.  Plaintiff "anticipates that discovery will show that the Federal Defendants are engaged in business in Washington D.C.," *id.* at 3, but as just discussed, that is not a sufficient basis upon which to base personal jurisdiction over defendants Carter and Waters, and the Court does not premise its dismissal of plaintiff's claims as to the other federal defendants on a lack of personal jurisdiction.  And to the extent that plaintiff's motion is an attempt to obtain broad discovery on issues other than defendants' contacts with this forum, *see id.* at 3–4 (seeking discovery on "Wire Tap Warranty, Arrest Warranty, Search Warranty, Grand Jury Transcripts, Fax Federal Detention Center files, all emails"), such a request is procedurally improper at this stage in the proceedings.

official in his individual capacity).  Furthermore, the second amended complaint does not allege facts that establish that plaintiff suffered an injury in the District of Columbia.  Rather, with regard to his claims against defendants Carter and Waters, "[t]he injuries of which plaintiff complains occurred while he was incarcerated" in West Virginia.  *Scinto*, 608 F. Supp. 2d at 8; *see also* 2d Am. Compl. ¶¶ 49–50, 95, 98, 106.  Thus, plaintiff has failed to show that the Court may properly exercise personal jurisdiction over defendants Carter and Waters under the Long Arm statute.

For the same reasons, plaintiff also cannot demonstrate the requisite "minimum contacts" between defendants Carter and Waters and the District of Columbia "establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs.*, 199 F.3d at 1347, quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002).  It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 127 (D.C. Cir. 1999), quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In short, "the defendant[s'] conduct and connection with the forum State [must be] such that [they] should reasonably anticipate being haled into court there."  *GTE New Media Servs.*, 199 F.3d at 1347, quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  The second amended complaint is devoid of any factual allegations regarding defendants Carter and Waters that would support such a finding here.  Thus, the Court cannot exercise personal jurisdiction over those defendants, and it will dismiss them from this case.

**III.    Plaintiff has failed to effect proper service on any of the named federal defendants in the manner required by the Federal Rules or by state law.**

Plaintiff states that he is suing each of the named federal defendants in his or her individual capacity for acts or omissions occurring in connection with the performance of their official duties. 2d Am. Compl. ¶ 21.   Service upon the United States Attorney General and the United States Attorney "does not obviate the requirement of personal service . . . where the action is in substance against a federal official in his individual capacity." *Lawrence v. Acree*, 79 F.R.D. 669, 670 (D.D.C. 1978).   Rather, in such an action, the defendants "must be served as individuals, pursuant to Rule 4(e)." *Simpkins*, 108 F.3d at 369; *see also* Fed. R. Civ. P. 4(i)(3).

Rule 4(e) provides that service may be effected on an individual by one of the following methods:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2).   Alternatively, service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).   Plaintiff attempted to serve some of the federal defendants in the District of Columbia and others in West Virginia, *see* Affs. of Service [Dkt. # 32], and so, the service of process rules for both jurisdictions apply.

"The Civil Rules of the Superior Court of the District of Columbia establish, in pertinent part, service requirements parallel to those contained in Rule 4(e)(2) of the Federal Rules of Civil Procedure." *Toms v. Hantman*, 530 F. Supp. 2d 188, 191 (D.D.C. 2008), citing D.C. Super. Ct.

Civ. R. 4(e)(2).  The D.C. Superior Court Rules also permit service to be effected "by mailing a copy of the summons, complaint and initial order to the person to be served by registered or certified mail, return receipt requested."  D.C. Super. Ct. Civ. R. 4(c)(3).

Similarly, the rules for service of process in West Virginia do not "vary in any relevant way from . . . the Federal Rules." *Tucker v. Thomas*, 853 F. Supp. 2d 576, 586 (N.D. W.Va. 2012). West Virginia Rule of Civil Procedure 4(d) permits service on an individual by one of the following methods:

> (A) Delivering a copy of the summons and complaint to the individual personally; or
>
> (B) Delivering a copy of the summons and complaint at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or
>
> (C) Delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint in the individual's behalf; or
>
> (D) The clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or
>
> (E) The clerk sending a copy of the summons and complaint by first class mail, postage prepaid, to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the clerk.

W. Va. R. Civ. P. 4(d)(1).

In his opposition, plaintiff describes what he believes are his successful attempts at service on the federal defendants:

> On September 23, 2014, a Private Processor, who was employed by the Plaintiff's Attorney, did, enter into the U.S. Attorney Office in Washington D.C. and Presented Complaints and Summons, naming all the Federal Defendants.  The Federal Defendants in West Virginia were served by U.S. Certified Mail, returned receipt requested.

> On February 20, 2015, a Consolidated Complaint and Summons, naming all the Federal Defendants was presented to U.S. Attorney Office in Washington D.C.  The Federal Defendants in West Virginia were served by U.S. Certified Mail, returned receipt requested.
>
> In March 2015, Amendment Complaint and Summons, naming all the Federal Defendants, was presented to the U.S. Attorney Office in Washington D.C.  The Federal Defendant in West Virginia were served by U.S. Certified mail, returned receipt requested.

Pl.'s Opp. at 26.  But upon review of the record, the Court finds that none of these attempts was compliant with the relevant federal or state rules governing service of process on a defendant named in his individual capacity.

Plaintiff filed the original complaint on September 23, 2014.  Compl.  On October 10, 2014, he filed proof of service forms for defendants Carter and Waters, which stated that plaintiff's counsel "served the summons and the complaint via certified mail, return receipt requested, restricted delivery upon W. Tennant, designated by law to accept service of process on behalf of the Bureau of Federal Prisons, FCI Morgan Town, West Virginia on October 7, 2014."  Proof of Service [Dkt. ## 5, 5-1].  While the notice stated that "a copy of the returned receipt requested" was "[a]ttached" to the proof of service, no return receipt was included in the filing.  *See id.*  Plaintiff did not file any service materials for any of the other federal defendants at that time.

On January 23, 2015, after observing that plaintiff had failed to file proof of service compliant with Federal Rule of Civil Procedure 4 with regard to any of the federal defendants, the Court ordered plaintiff to file adequate proof of service or show cause why those defendants should not be dismissed from the case for want of prosecution.  Show Cause Order [Dkt. # 9].  Three days later, plaintiff filed return receipts for service on defendants Carter and Waters, indicating that service had been received by "W. Tennant" at "FCI Morgan Town, WV, P.O. Box 1000, Morgan Town, WV 26507" on October 7, 2014.  Return Receipts [Dkt. # 10].  He also filed affidavits of

service stating that a process server had effected service on each of the other federal defendants by serving "Steffon Edmonds as Mail Clerk," at "950 Pennsylvania Avenue, Washington DC 20535," on October 21, 2014.  Affs. of Service [Dkt. # 10-1].  Plaintiff explained that the affidavits of service "were inadvertingly [sic] not electronically filed on or about October 21, 2014."  Pl.'s Resp. to Show Cause Order Issued on Jan. 23, 2015 [Dkt. # 11] at 3.

On February 3, 2015, the Court consolidated this case with a related civil action, and it directed plaintiff to file a single, consolidated complaint.  Order (Feb. 3, 2015) [Dkt. # 15].  Because no defendant had yet entered an appearance, and because the Court had doubts as to the sufficiency of plaintiff's prior attempts at service, it ordered plaintiff to serve the consolidated complaint on all parties and to provide adequate proof of service for each defendant.  *Id.*  Plaintiff filed the consolidated complaint on March 30, 2015, 2d Am. Compl., and on April 6, 2015, he filed affidavits of service and return receipts listing the following defendants and addresses:

- Charles E. Samuels – Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534

- James B. Comey – Federal Bureau of Investigations, 935 Pennsylvania Ave., NW, Washington DC 20535

- Anne Mary Carter – Morgan Town Federal Correctional Institution, P.O. Box 1000, Morgan Town, West Virginia 26507

- Dr. Waters, MD – Morgan Town Federal Correctional Institution, P.O. Box 1000, Morgan Town, West Virginia 26507

- Ryan M. Pardee – Federal Bureau of Investigations, 935 Pennsylvania Ave., NW, Washington DC 20535

Affs. of Service [Dkt. # 32]; Return Receipts [Dkt. ## 32-1, 32-2].[4]  Plaintiff did not file any materials for defendants Timothy Ervin, Brian Mumford, Alyson Samuels, or Tucker Vanderbunt at that time.[5]

Not one of these attempts at service complied with the federal or state rules.  With the potential exception of defendant Pardee, as discussed below, plaintiff did not serve any of the individuals "personally" or at their "dwelling or usual place of abode."  Fed. R. Civ. P. 4(e)(2)(A)–(B); *see also* D.C. Super. Ct. R. 4(e)(2); W. Va. R. Civ. P. 4(d)(1)(A)–(B).  In fact, he did not even attempt to serve defendants Ervin, Mumford, Samuels, or Vanderbunt with the amended consolidated complaint at all, despite the Court's order to do so.  *See* Order (Feb. 3, 2015).  And plaintiff does not contend that "W. Tennant," "Steffon Edmonds," or any of the other individuals who signed the return receipts for the second amended complaint in March 2015 were qualified as "an agent authorized by appointment or by law to receive service of process" on behalf of the federal defendants he did attempt to serve.  Fed. R. Civ. P. 4(e)(2)(C); *see also* D.C. Super Ct. R. 4(e)(2); W. Va. R. Civ. P. 4(d)(1)(C).  "[I]t is a fair inference," therefore, that the individuals who signed for these deliveries were "authorized to receive business mail only."  *See Terry v. Dewine*, 75 F. Supp. 3d 512, 528–29 (D.D.C. 2014).

---

4   Plaintiff also filed service materials for Eric Holder, in his capacity as United States Attorney General, and Ronald C. Machen, in his capacity as Attorney General for the District of Columbia.  Affs. of Service [Dkt. # 32]; Return Receipts [Dkt. # 32-1].

5   In addition to the two attempts at service just described, plaintiff asserts that "[o]n February 20, 2015, a Consolidated Complaint and Summons, naming all the Federal Defendants was presented to U.S. Attorney Office in Washington D.C.," and that "[t]he Federal Defendants in West Virginia were served by U.S. Certified Mail, returned receipt requested."  Pl.'s Opp. at 26.  The docket does not reflect any service materials relating to a February 2015 attempt to serve any of the federal defendants, and in any event, for the reasons stated below, this method of service is inadequate under the federal and state rules.

Plaintiff does state that "a named Defendant, had already signed for the complaint and summons," and that he "is in possession of the documents bearing the Defendant's signature." Pl.'s Opp. at 26.  He does not clarify which defendant he is referring to, and he did not provide the Court with the documents he describes.  Nevertheless, the Court presumes that he is referring to defendant Pardee, because it is clear from the signatures on the return receipts for each of the other defendants that they were received and signed for by someone other than the defendant.  *See* Return Receipts [Dkt. ## 32-1, 32-2].  On defendant Pardee's return receipt, the box marked "Addressee" is checked, and there is a signature that appears to begin with the letter "R."  Return Receipts [Dkt. # 32-2].  However, the signature is not entirely legible, and the materials appear to have been first received by another individual.  *Id.* (showing initials "JGT/JM" in "Received by" field).

Without more from plaintiff, who bears the burden of demonstrating that service was proper, *see Light*, 816 F.2d at 751, the Court finds that "it is a fair inference that it was someone authorized to receive business mail only" that signed for the service materials addressed to defendant Pardee.  *See Terry*, 75 F. Supp. 3d at 528; *see also id.* at 528–29 ("There is no reason to assume that such a person was authorized to receive service of process upon [defendant] in his individual capacity, and plaintiff has not even attempted to show that the recipient was so authorized.").  And even if defendant Pardee was personally served with the service materials, plaintiff has failed to state a plausible claim against him, as discussed below.

In certain circumstances, courts have granted a plaintiff the opportunity to perfect inadequate service of process, rather than dismissing the case for failure to comply with Rule 4. *See, e.g.*, *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993), citing *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987); *Dixon v. Stephenson, Inc.*, 614 F. Supp. 60, 62 (D.D.C. 1985).  But in those cases, the plaintiffs were proceeding *pro se*; here, plaintiff has been

represented by counsel since this case was filed.   He has already been afforded multiple opportunities to perfect service on the individual federal defendants, and he has not shown the "good cause" required by Rule 4(m) to excuse his failure to do so.   Fed. R. Civ. P. 4(m).   And in any event, because plaintiff's claims fail under several other provisions of Rule 12(b), dismissal of his claims against the individual federal defendants is warranted.[6]

## IV.   Venue is not proper in the District of Columbia for most of plaintiff's claims because a substantial part of the events underlying his claims did not take place in the District.

Plaintiff states that each of the federal defendants is sued "individually and in his/her individual capacity."   2d Am. Compl. ¶ 21.   Thus, for plaintiff's claims against the individual federal defendants, venue in this case is governed by 28 U.S.C. § 1391(b).   *See Stafford*, 444 U.S. at 544.

Section 1391(b) provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

6      Plaintiff argues that because he served the federal defendants "with (three civil separate complaints and summons) on September 23, 2014, February 20, 2015, and March 2015," they have waived any jurisdictional defenses because they did not raise them until they filed their motion to dismiss on June 17, 2015.   Pl.'s Opp. at 27.   Rule 12 does require that certain defenses be asserted in a party's responsive pleading, but such a responsive pleading is only required from a defendant "after being served with the summons and complaint."   Fed. R. Civ. P. 12(a)(1)(A)(i), (b). "Defendants, not having been served, had no duty to respond to the Complaint," *Void-El v. O'Brien*, 811 F. Supp. 2d 255, 259 (D.D.C. 2011), and so plaintiff's waiver argument is unavailing.

28 U.S.C. § 1391(b).  Plaintiff contends that venue is proper in this District pursuant to section 1391(b)(2), because "the 'events or omissions giving rise to the claim[s]' came about in [the] District of Columbia, where members of the FBI Washington D.C. Field Office started the investigation."  Pl.'s Opp. at 29.

Section 1391(b)(2) does not require a plaintiff to bring suit in a district where every event that supports an element of the claim occurred; rather, it merely requires a plaintiff to show that some considerable portion of the events occurred in his chosen forum.  *See Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006) ("Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the *most substantial* portion of the relevant events occurred . . . .").  In applying that analysis, courts should undertake a "commonsense appraisal" of the "events having operative significance in the case."  *Lamont v. Haig*, 590 F.2d 1124, 1134 n.62 (D.C. Cir. 1978) (noting that in certain situations "the forum court should not oppose the plaintiff's choice of venue if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to the plaintiff's grievance").  The events supporting venue "must be the ones out of which the plaintiff's claims arise; they cannot be tangential, such as the 'general business connections' the defendant may have in the judicial district."  *Bullock v. Wash. Metro. Area Transit Auth.*, 943 F. Supp. 2d 52, 57 (D.D.C. 2013), citing *Murdoch v. Rosenberg & Assocs., LLC*, 875 F. Supp. 2d 6, 10 (D.D.C. 2012).

Here, a substantial part of the events that gave rise to plaintiff's claims against the federal defendants occurred in Maryland and West Virginia, and not in the District of Columbia. Plaintiff's claims alleging an unlawful arrest, the unlawful search of plaintiff's person, children,

and property, his false imprisonment during the arrest,[7] and the denial of his due process right to an extradition hearing all arise out of events that took place in Maryland.  2d Am. Compl. ¶¶ 26–45, 71–94, 100–104.  And plaintiff's claims related to his incarceration at the BOP facility in Morgantown, including his claims for emotional distress, cruel and unusual punishment, and mistreatment by prison physicians, are based on events that occurred in West Virginia.  *Id.* ¶¶ 46–50, 71–77, 95–101, 106.

Plaintiff insists in his opposition that "[t]he 'events or omissions giving rise to the claim[s]' came about in [the] District of Columbia, where members of the FBI Washington D.C. Field Office started the investigation, 2007."  Pl.'s Opp. at 29.  But there are no allegations in the second amended complaint to this effect, and in fact, that document is devoid of references to any incident that took place in the District, let alone one giving rise to the particular injuries of which plaintiff complains.  The only actual event plaintiff claims occurred in the District of Columbia was his initial appearance before a Magistrate Judge in the District, *see id.*, but he does not contend that this incident itself injured him; rather, he alleges that he was wrongfully denied a hearing *in Maryland*, *before* he was extradited to the District of Columbia.  *See* 2d Am. Compl. ¶¶ 36–41, 86–91, 100, 103.

To the extent that plaintiff attempts to base venue in this District on the fact that the BOP and FBI have their headquarters here, he cannot do so.  *See Murdoch*, 875 F. Supp. 2d at 10 ("Defendants' general business connections to the District of Columbia do not suffice to show that this district is where a substantial part of the events or omissions giving rise to the claim[s]

---

7    Because "false imprisonment consists of detention without legal process," and thus "ends once the victim becomes held *pursuant to such process* – when, for example, he is bound over by a magistrate or arraigned on charges," *Wallace v. Kato*, 549 U.S. 384, 389 (2007) – the Court assumes that plaintiff's claim for false imprisonment is based on plaintiff's detention during his arrest and transportation to the District, and not his imprisonment in West Virginia.

occurred."). Thus, the Court finds that venue is improper in this District as to all claims against the individual federal defendants.[8]

As for plaintiff's common law claims, which now proceed only against the United States, venue is improper as to his false imprisonment claim, at the very least. "Any civil action on a tort claim against the United States under [the FTCA] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiff states that he is a resident of Maryland, 2d Am. Compl. ¶ 7, and as just discussed, the factual allegations regarding his arrest and extradition show that the alleged injuries underlying this claim were sustained in Maryland, not in the District of Columbia.

As for plaintiff's claims for malicious prosecution, conspiracy to abuse process, false light invasion of privacy, and infliction of emotional distress, as well as his expungement action, it is not clear from the allegations of the second amended complaint where the events giving rise to those claims took place. The criminal case against plaintiff was filed in the District, and he was prosecuted and convicted here, but a review of the indictment reveals that the investigation involved conduct in both Maryland and the District, *see* Indictment [Dkt. # 1], *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14 ("Indictment"), and any press coverage of that investigation likely spanned both jurisdictions. "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman*, 254 F. Supp. 2d at 56. Plaintiff has failed to proffer factual allegations or

---

8    "[I]f there is no district in which an action may otherwise be brought," section 1391(b)(3) provides for venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). But because the Court has determined that plaintiff failed to effect proper service on any of the individual federal defendants, it lacks personal jurisdiction over them, and so, venue is improper in this District even under section 1391(b)(3).

argument sufficient to meet that burden with regard to these claims.  But even if the Court can fairly infer that the acts underlying those counts took place in the District, because venue is improper with regard to the majority of plaintiff's claims, the Court can decline to exercise pendent jurisdiction over this entire matter based only on those tort claims for which venue is proper.  *See, e.g.*, *Coltrane v. Lappin*, 885 F. Supp. 2d 228, 232–36 (D.D.C. 2012) (declining to exercise pendent jurisdiction over *Bivens* claims based on jurisdictional hook of properly-venued FTCA claims, and transferring entire matter to another district).

Plaintiff is correct that the venue provisions permit the transfer of a case from a district in which venue is improper "to any district or division in which it could have been brought."  Pl.'s Opp. at 30–31, citing 28 U.S.C. § 1406(a).  But there is no other district in which plaintiff could bring all counts of the second amended complaint, because some of the events and omission giving rise to his claims took place in Maryland, while others occurred in West Virginia.  Thus, venue would be improper in either district, and transfer is not warranted, particularly given the Court's rulings concerning the other deficiencies in the second amended complaint.

## V.     Many of plaintiff's claims are barred by the applicable statute of limitations.

The federal defendants contend that many of plaintiff's claims are time-barred, because this action was not initiated within the applicable statute of limitations.  Defs.' Mem. at 30–32.  Plaintiff does not address this argument in his opposition, and so the Court deems it to be conceded.  *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 Fed. App'x 8 (D.C. Cir.

2004); *see also Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (treating argument raised by the defendant as conceded where the plaintiff failed to oppose it).[9]

And in any event, the Court agrees with the federal defendants that many of plaintiff's claims are untimely.  Plaintiff's false imprisonment claim in Count V, his Fourth Amendment claims in Count VI, his Fifth Amendment claims in Counts VII and XI, his Sixth Amendment claims in Counts VIII and XII, and portions of his Eighth Amendment claims in Counts IX, X, and XIII arise out of plaintiff's arrest, the search of his home, the seizure of his children, his arrest, and his transfer from Maryland to the District of Columbia, which took place on June 19, 2007.  *See* 2d Am. Compl. ¶¶ 78–94, 98, 100, 103, 106.  Because plaintiff failed to initiate an action based on those claims within the relevant limitations period, they are time-barred.

"The statute of limitations in a *Bivens* claim represents a combination of federal and state law."  *Loumiet v. United States*, 968 F. Supp. 2d 142, 149 (D.D.C. 2013).  "When a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period."  *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  In the context of a *Bivens* action claiming the deprivation of constitutional rights, the D.C. Circuit has indicated that D.C. Code § 12-301 provides the relevant limitations periods. *See, e.g.*, *Zhao v. Unknown Agent of CIA*, 411 F. App'x 336, 336–37 (D.C. Cir. 2010) (finding that the appellant's *Bivens* claims were "barred by the applicable statute of limitations" and citing D.C. Code § 12-301); *see also Doe*, 753 F.2d at 1114–15 (D.C. Cir. 1985) (applying one-year statute of limitations for defamation actions set out in D.C. Code § 12-301(4) to *Bivens* claim based on

---

9   Plaintiff repeatedly asserts in his opposition that "he timely and properly filed an administrative claim" with the FBI and BOP.  *See* Pl.'s Opp. at 19–22; *see also* 2d Am. Compl. ¶¶ 4–5 (stating that plaintiff presented his claims to the FBI and BOP on January 27, 2014, "[p]ursuant to 28 U.S.C. § 2675(a)").  But that has no effect on whether plaintiff's complaint in this Court was filed within the relevant limitations period.

allegations of dissemination of false and defamatory statements).  Section 12-301 imposes a one-year statute of limitations for claims of false arrest and false imprisonment, D.C. Code § 12-301(4), and it sets a three-year limitations period for actions "for which a limitation is not otherwise specially prescribed."  *Id.* § 12-301(8).

"However, while state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues."  *Loumiet*, 968 F. Supp. 2d at 150, citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").  Accrual occurs "when the plaintiff has a complete and present cause of action."  *Wallace*, 549 U.S. at 388, quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S 192, 201 (1997).

The Court first finds that plaintiff's tort and constitutional claims for false arrest and false imprisonment are untimely.  Because these claims "consist[] of detention without legal process," they accrue "once the victim becomes held *pursuant to such process* – when, for example, he is bound over by a magistrate or arraigned on charges."  *Id.* at 389.  And because a "Fourth Amendment search and seizure claim is analogous to false arrest," *Wormley v. United States*, 601 F. Supp. 2d 27, 35 (D.D.C. 2009), plaintiff's unlawful search and seizure claims also accrued when he was afforded process.  Plaintiff was arraigned on the charges against him on June 20, 2007, and he was held without bond.  *See* Min. Entry (June 20, 2007), *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14.  Thus, all of his claims based on allegations of false arrest, false imprisonment, and unlawful search and seizure accrued on June 20, 2007, when he was held pursuant to process. *Wallace*, 549 U.S. at 389.  Those claims are therefore time-barred, because this action was not initiated until September 23, 2014, well outside of the one-year statute of limitations imposed by

D.C. Code § 12-301(4) for claims based on false imprisonment, or even the more generous three-year period in section 12-301(8).

For the same reasons, plaintiff's Fifth and Sixth Amendment claims relating to his extradition are also untimely.  Plaintiff asserts that he was deprived of an extradition hearing before being taken from Maryland to the District and that he was denied the assistance of legal counsel during the extradition process.  2d Am. Compl. ¶¶ 86–91, 100, 103.  Plaintiff had "a complete and present cause of action" regarding his claimed right to an extradition hearing and the purported denial of his access to counsel the moment he was transported from Maryland to the District.  *See Wallace*, 549 U.S. at 388; *see also id.* at 391 ("[T]he tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of the injury is not then known or predictable.") (internal quotation marks and citations omitted).  And he could have sought relief for those claims as soon as he was released on personal recognizance on June 22, 2007.  *See* Min. Entry (June 22, 2007), *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14.

The same logic applies to plaintiff's Eighth Amendment claims, insofar as they are based on harm allegedly inflicted during his arrest and initial detention.  *See* 2d Am. Compl. ¶¶ 92–94, 98, 106.  The injuries plaintiff identifies were sustained on June 19, 2007, and at the very latest, his claims based on those events accrued when he was released from custody on June 22, 2007, at which point he could have filed suit.  He did not, and so, even under the general three-year statute of limitations, his claims are time-barred.

Thus, the Court finds that plaintiff's false imprisonment claims in Count V, his Fourth Amendment claims in Count VI, his Fifth Amendment claims in Counts VII and XI, his Sixth

Amendment claims in Counts VIII and XII, and portions of his Eighth Amendment claims in

Counts IX, X, and XIII must be dismissed with prejudice as untimely.[10]

Several of plaintiff's remaining common law tort claims against the United States are also

time-barred to the extent that they assert causes of action that accrued prior to January 27, 2012.

"[T]he FTCA requires that claims be presented to the agency in question within two years of

accrual, and filed in court within six months after denial by the agency." *Mittleman*, 104 F.3d at

413, citing 28 U.S.C. §§ 2401(b), 2675(a). "A claim not so presented and filed is 'forever barred.'"

*Id.*, quoting 28 U.S.C. § 2401(b). Plaintiff states that "the claim set forth herein was presented" to

the FBI and BOP "on Jan 27, 2014." 2d Am. Compl. ¶¶ 4–5.[11] Thus, any claim accruing prior to

January 27, 2012 – two years before plaintiff's claims were presented to the relevant agencies –

are time-barred.

While the second amended complaint lacks any specifics regarding the events giving rise

to plaintiff's false light invasion of privacy and infliction of emotional distress claims, it appears

that at least some aspects of those counts are based on plaintiff's arrest and detention and the

publication of the facts of those events. *See id.* ¶¶ 63–66, 71. "[T]he general rule [is] that an

---

10    The D.C. Circuit has stated that "courts should hesitate to dismiss a complaint on statute
of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d
1205, 1209 (D.C. Cir. 1996). "[B]ecause statute of limitations issues often depend on contested
questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-
barred." *Id.*, citing *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981). And "[a] dismissal *with
prejudice* is warranted only when a trial court 'determines that the allegation of other facts
consistent with the challenged pleading could not possibly cure the deficiency.'" *Id.*, quoting
*Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985). The Court finds that standard
to be satisfied in this case – there are no factual disputes that need to be resolved and there are no
additional facts plaintiff could allege that would make these claims timely – and the dismissal of
these claims with prejudice is therefore warranted.

11    He adds that and that his claim was denied by the FBI on April 25, 2014, and because the
BOP "failed to make a final disposition of the claim within" six months, he deemed that failure to
be a denial of his claim. 2d Am. Compl. ¶ 5.

FTCA claim accrues when a plaintiff 'has discovered both his injury and its cause.'" *Loumiet v. United States*, 106 F. Supp. 3d 219, 224 (D.D.C. 2015), quoting *United States v. Kubrick*, 444 U.S. 111, 120 (1979).  Thus, insofar as Counts III and IV are based on injuries for which a cause of action accrued prior to January 27, 2012 – including any distress caused by plaintiff's treatment during his arrest and any publicity regarding his arrest and indictment – they are untimely and they will be dismissed with prejudice.

**VI.    The second amended complaint will be dismissed for failure to state a claim pursuant to Rule 12(b)(6).**

Even if some portions of plaintiff's claims have overcome the hurdles of subject matter jurisdiction, personal jurisdiction, venue, service of process, and timeliness, the Court also finds that plaintiff has failed to state a plausible claim against any of the remaining defendants, including the United States.

**A.    The second amended complaint is devoid of any factual allegations that would support a plausible claim against defendants James B. Comey, Anne M. Carter, and Charles E. Samuels, Jr.**

Plaintiff has failed to state a claim against defendants James B. Comey, Anne M. Carter, and Charles E. Samuels, Jr. because the second amended complaint fails to show that they played any role in the constitutional violations of which he complains.

With regard to defendant Comey, the Director of the FBI, plaintiff alleges only that "he is responsible for the operation of the Federal Bureau of Investigations [sic]."  2d Am. Compl. ¶ 16. Comey is not specifically named in any of the substantive counts of the second amended complaint, and the only counts that could be construed as asserted against him are Counts XI and XII, plaintiff's claims for violations of the Fifth and Sixth Amendments based on his arrest and extradition, which he states are "against all Defendants who were FBI Agents or Supervised the FBI Agents."  *Id.* ¶¶ 100–01, 103–04.  Plaintiff's lone allegation concerning defendant Carter is

that she "is legally responsible for the operation of BOP Morgan Town [sic], West Virginia, and the welfare of all the inmates of that prison." *Id.* ¶¶ 9, 46. As for defendant Samuels, plaintiff alleges only that he "is responsible for, the operation of the Bureau of Prisons." *Id.* ¶ 15. The second amended complaint does not name either Carter or Samuels in any of the substantive counts, and the Court is unclear as to which, if any, of plaintiff's claims are intended to be asserted against those two defendants.

Plaintiff's bare allegations of supervisory authority, without more, are plainly insufficient to state a plausible claim against defendants Comey, Carter, and Samuels. Setting aside the issue of whether any of the FBI agent defendants or Dr. Waters committed any of the constitutional violations or tortious acts of which plaintiff complains, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676. Rather, "[b]ecause vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* In other words, "[c]ritical to a *Bivens* claim is an allegation 'that the defendant federal official was personally involved in the illegal conduct.'" *Ballard v. Holinka*, 601 F. Supp. 2d 110, 120 (D.D.C. 2009), quoting *Simpkins*, 108 F.3d at 369 (D.C. Cir. 1997).

Plaintiff has failed to allege that defendants Comey, Carter, and Samuels had any personal involvement in the constitutional violations alleged in the complaint, and he has therefore failed to state a plausible claim against them. *See, e.g.*, *Zhao*, 411 F. App'x at 336 (D.C. Cir. 2010) ("Appellant failed to state a claim under *Bivens* . . . against the Secretary of the Department of Homeland Security because he did not allege that the Secretary, through her 'own individual actions, has violated the Constitution.'"), quoting *Iqbal*, 556 U.S. at 676; *see also Cameron v.*

*Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (concluding that a complaint naming Attorney General and the BOP Director as defendants based on theory of *respondeat superior*, without allegations specifying their involvement in the case, did not state *Bivens* claim against them). Thus, defendants Comey, Carter, and Samuels will be dismissed from this action.

### B.      Plaintiff's claims on behalf of his children will be dismissed.

Plaintiff attempts to assert Fourth and Eighth Amendment claims on behalf of his minor children, based on his allegations that the FBI agent defendants placed his children in handcuffs and detained them during plaintiff's arrest. 2d Am. Compl. ¶¶ 32–34, 80, 83–84, 92, 98, 106. The federal defendants have moved to dismiss these claims on the grounds that "[p]laintiff does not assert that he has standing or the necessary capacity to bring an action on behalf of his minor children." Defs.' Mem. at 32. Plaintiff fails to address this argument in his opposition, and so the Court finds that he has conceded this point. *See, e.g.*, *Hopkins*, 284 F. Supp. 2d at 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

And even if the matter were not conceded, plaintiff failed to allege the necessary predicate for asserting claims based on injuries sustained by his children – that he is the children's custodial parent, *see King v. District of Columbia*, 878 F. Supp. 2d 8, 11–12 (D.D.C. 2012) or that he is otherwise asserting these claims in a representative capacity – and the Court therefore finds that he has failed to state a claim on their behalf. Finally, these claims fail for the same reasons as do plaintiff's individual Fourth and Eighth Amendment claims based on the same factual allegations, to be discussed below. Thus, plaintiff's claims on behalf of his children in Counts VI, IX, X, and XIII will be dismissed.

**C.    Plaintiff has failed to state a plausible constitutional claim against the FBI agent defendants or defendant Waters.**

Plaintiff brings claims against the FBI agent defendants for violations of his Fourth, Fifth, Sixth, and Eighth Amendment rights, and against defendant Waters for violations of his Eighth Amendment rights. But the second amended complaint fails to state a plausible claim against any of these defendants, and so plaintiff's constitutional claims will be dismissed.

### 1.    Count VI: Fourth Amendment Claims

In Count VI, plaintiff first alleges that the FBI agent defendants violated the Fourth Amendment when they "used illegal wire and bugging devices, as evidence against [him]." 2d Am. Compl. ¶ 78. Other than this conclusory and unadorned statement, the second amended complaint lacks any other allegations about a wiretap, let alone facts that would permit the Court to infer that the FBI agent defendants had engaged in any misconduct or violated plaintiff's Fourth Amendment rights in this manner. The Court could therefore dismiss this aspect of Count VI on that ground alone. *See, e.g.*, *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"), quoting Fed. R. Civ. P. 8(a)(2).

Plaintiff does offer some additional context for the illegal wiretap claim in his opposition to the motion to dismiss, when he quotes at length from the D.C. Circuit's opinion in *United States v. Glover*, 736 F.3d 509 (D.C. Cir. 2013). *See* Pl.'s Opp. at 13–14, 27–28, 33–34. In that decision, the Court reversed the convictions of Lonnell Glover – one of plaintiff's co-conspirators in his criminal case, *see* Indictment – and Jonathan Wright, after finding that the government had placed an audio recording device in Glover's truck "pursuant to a 'facially insufficient' warrant" and later obtained evidence from that device that proved to be instrumental at those defendants' trial. *Glover*, 736 F.3d at 510, 516.

32

But whether Glover's and Wright's Fourth Amendment rights were violated by the placement of the device in Glover's truck sheds no light whatsoever on whether *plaintiff's* constitutional rights were infringed.  *See, e.g.*, *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable."); *Rakas v. Illinois*, 439 U.S. 128, 138 (1978) ("[T]he 'rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.'"), quoting *Simmons v. United States*, 390 U.S. 377, 389 (1968).  Thus, the *Glover* decision cannot provide a foundation for plaintiff's Fourth Amendment claim based on an allegedly illegal recording device placed in Glover's truck, and that aspect of Count VI will be dismissed pursuant to Rule 12(b)(6).

Plaintiff also claims that the FBI agent defendants "conducted a False Arrest" on plaintiff, "[p]articipated in the false Imprisonment" of plaintiff during the arrest "by restraint" against his will "within boundaries fixed by defendant," and searched his house "without a Search Warrant," in violation of the Fourth Amendment.  2d Am. Compl. ¶¶ 78–85; *see also id.* ¶¶ 26–35.  But these allegations do not support a plausible Fourth Amendment claim.  Plaintiff was arrested pursuant to a warrant issued by a Magistrate Judge of this Court.  *See* Warrant for Arrest [Dkt. # 15], *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14 ("Arrest Warrant").  That warrant supplies the agents with an authorization for plaintiff's arrest, the search of his person and his home incident to that arrest, and the detention of residents of the home during the arrest.  *See, e.g.*, *Payton v. New York*, 445 U.S. 573, 602–03 (1980) ("If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law."); *Bailey v. United States*, 133 S. Ct. 1031,

1037 (2013) (permitting "officers executing a search warrant 'to detain the occupants of the premises while a proper search is conducted'"), quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

And "even if the [arrest] warrant were not valid for some reason . . . the fact that the government agents acted on what appeared to be a facially valid warrant would be enough to cloak them with qualified immunity and require dismissal" of plaintiff's false arrest and illegal search and seizure claims.  *See Bailey v. U.S. Marshall Serv.*, 584 F. Supp. 2d 128, 133 (D.D.C. 2008); *see also id.* 132–33 ("Where an arresting officer has a reasonable, good faith belief that he is acting pursuant to a properly issued warrant, the arrest is not a false arrest and is not unconstitutional."); *Rusell v. Quick*, No. CIV.A. 93-2216 SSH, 1994 WL 413361, at *1 (D.D.C. July 27, 1994) ("A search made pursuant to a facially valid warrant precludes an action under 42 U.S.C. § 1983 for false imprisonment and false arrest, even if the warrant is later determined to have an inadequate factual foundation."), citing *Baker v. McCollan*, 443 U.S. 137, 143 (1979).  For those reasons, the Court finds that dismissal of Count VI is warranted pursuant to Rule 12(b)(6).

## 2.    Counts VII and XI:  Fifth Amendment Claims

In Counts VII and XI, plaintiff brings Fifth Amendment against the FBI agent defendants, alleging that he was "not given notice and an opportunity to be heard, before being Extradited" and that he "was detained under excessive and punitive conditions," in violation of "the substantive and procedural components of the Fifth Amendment."  2d Am. Compl. ¶¶ 86–90, 100.[12]

---

12    Plaintiff also alleges that the FBI agent defendants violated the Fifth Amendment because they arrested plaintiff without probable cause and for an unlawful purpose. 2d Am. Compl. ¶ 100. For the reasons underlying the dismissal of plaintiff's Fourth Amendment claim, this aspect of his Fifth Amendment claim also fails.

Whether the hearing described in the complaint is referred to as an "extradition hearing," as plaintiff calls it, an initial appearance, or a preliminary hearing, there is no Fifth Amendment due process right to receive one. *See, e.g.*, *United States v. Heideman*, 21 F.R.D. 335, 336 (D.D.C. 1958) ("[T]here is no constitutional right to a preliminary hearing. It is governed by Rule 5 of the Federal Rules of Criminal Procedure."), *aff'd*, 259 F.2d 943 (D.C. Cir. 1958); *see also* 1 Orfield's Criminal Procedure Under the Federal Rules § 5:36 ("The right to be brought before a commissioner without unnecessary delay is not a constitutional right.").[13]   And the process plaintiff was entitled to – being taken "without unnecessary delay before a magistrate judge" for an initial appearance, *see* Fed. R. Crim. P. 5(a)(1)(A) – was exactly the process he received. *See* Min. Entry (June 20, 2007), *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14 (indicating that plaintiff was brought before a Magistrate Judge for his "Arraignment/Initial Appearance" on June 20, 2007, the day after he was arrested); *see also United States v. Salamanca*, 990 F.2d 629, 633–34 (D.C. Cir. 1993) (finding no "unnecessary delay" where initial appearance occurred "within twenty-four hours" of arrest and noting that "[o]ne of the primary rationales for a prompt appearance . . . is to resolve the issue of probable cause," which had already been resolved because

---

13      Further, it appears that plaintiff's transfer from Maryland to the District of Columbia complied with the Federal Rules of Criminal Procedure. When a defendant "is arrested in the district where the offense was allegedly committed," Rule 5 provides that his initial appearance "must be in that district." Fed. R. Crim. P. 5(c)(1)(A). In contrast, when a defendant is "arrested in a district other than where the offense was allegedly committed," his initial appearance must either be "in the district of arrest" or "in an adjacent district if . . . the appearance can occur more promptly there." Fed. R. Crim. P. 5(c)(2). Plaintiff was indicted in the District of Columbia for conspiring to possess with the intent to distribute phencyclidine ("PCP") "in the District of Columbia, the District of Maryland," and several other districts. Indictment at 1. While Rule 5(c) does not clarify where a defendant is to be taken when the offense was allegedly committed in multiple districts, it seems to the Court that plaintiff could have been presented for his initial appearance in either the District of Columbia or Maryland. And even if Rule 5(c)(1) did require that plaintiff be presented in Maryland, plaintiff has at most alleged a violation of that rule, not a violation of his constitutional rights.

the defendant "was arrested pursuant to a warrant").   Thus, he has not alleged an actionable constitutional violation, and this aspect of his Fifth Amendment claim fails.

To the extent that plaintiff is attempting to assert an excessive force claim based on the circumstances of his arrest, *see* 2d Am. Compl. ¶ 100, such a claim is properly brought under the Fourth Amendment, not the Fifth.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[*A*]*ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.").  And even if that claim was properly asserted, plaintiff offers no detail about the allegedly "excessive and punitive conditions" under which he was detained, and he fails to allege that the FBI agent defendants used any force at all in arresting him, let alone that they used a degree of force that was objectively unreasonable under the circumstances.  *See id.* at 397 ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").[14]  Thus, plaintiff has failed to state any excessive force claim based on his arrest.

Plaintiff also alleges that, "being an African-American [he] was treated differently than a White American, [because] a White American would have been granted an Extradition Hearing." 2d Am. Compl. ¶ 88; *see also id.* ¶ 100 ("Plaintiff was treated differentlyly then [sic] similarly situated White Americans . . . because there was no individualized Extradition Hearing, or proper

---

14      Plaintiff does allege in conclusory fashion that the FBI agent defendants "assaulted him" in connection with his Eighth Amendment claims.  2d Am. Compl. ¶¶ 93–94.  But he declines to elaborate further on these claims, and such unadorned allegations are plainly insufficient to state a claim for the unlawful use of force.

process before Plaintiff was extradited from the State of Maryland to Washington D.C., and was detained under excessive and punitive conditions.").

"Where the claim is invidious discrimination in contravention of the . . . Fifth Amendment[] . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676, citing *Washington v. Davis*, 426 U.S. 229, 240 (1976). "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'" *Id.*, quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). "It instead involves a decisionmaker's undertaking a course of action 'because of, not merely in spite of, [the action's] adverse effects upon an identifiable group.'" *Id.* at 676–77, quoting *Feeney*, 442 U.S. at 279. "It follows that, to state a claim based on a violation of a clearly established right, [a plaintiff] must plead sufficient factual matter to show" that the defendant took the actions at issue "not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* at 677.

Nowhere in the second amended complaint does plaintiff offer any factual allegations that would tend to show that any of the federal defendants acted with any such discriminatory intent or purpose based on plaintiff's race. Nor has plaintiff alleged the existence of a clearly established constitutional right. Thus, plaintiff's Fifth Amendment claims in Counts VII and XI will be dismissed in their entirety.

### 3.      Counts VIII and XII:  Sixth Amendment Claims

In Counts VIII and XII, plaintiff alleges that the FBI agent defendants deprived him of his Sixth Amendment right to the "assistance of Legal Counsel, when he was Extradited from the State of Maryland to Washington." 2d Am. Compl. ¶¶ 91, 103. These claims fall with plaintiff's Fifth Amendment claims, because he has failed to show that he was constitutionally entitled to any such

"extradition hearing."  If he was not entitled to such a hearing, it follows that he also was not entitled to counsel at the hearing.  Moreover, the record reflects that plaintiff was represented by counsel during his initial appearance and arraignment before the Magistrate Judge on June 20, 2007.  Min. Entry (June 20, 2007), *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14 ("Minute Entry for proceedings held before Magistrate Judge John M. Facciola: Arraignment/Initial Appearance as to JEROME HAMPTON . . . . Defense Attorney: Nathan Silver . . . ."). Thus, the Sixth Amendment right to counsel was satisfied, *see Rothgery v. Gillespie Cty.*, 554 U.S. 191, 194 (2008) ("[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty."), and the Court will dismiss plaintiff's Sixth Amendment claims.

### 4.    Counts IX, X, and XIII:  Eighth Amendment Claims

Plaintiff alleges that the FBI agent defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they exhibited "deliberate indifference" during his arrest and "disregarded an excessive risk to Plaintiff's safety" by sending him to prison, despite having "knowledge about the substantial risk of serious harm to Plaintiff by him going to prison." 2d Am. Compl. ¶¶ 93–94, 98, 106.  These claims must be dismissed, because the Eighth Amendment's prohibition on cruel and unusual punishment "applies only to persons who are subject to 'punishment' by the government, which the Supreme Court has defined to mean persons against whom the government 'has secured a formal adjudication of guilt in accordance with due process of law.'"  *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007), quoting *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979).  Because the FBI agent defendants' involvement in plaintiff's case was limited to the events of plaintiff's arrest and transfer from

Maryland to the District, *see* 2d Am. Compl. ¶¶ 26–41, 43–45, all of which preceded his trial and conviction, they could not have subjected plaintiff to the sort of "punishment" proscribed by the Eighth Amendment.

And in any event, the fact that one was incarcerated after a criminal conviction is not sufficient to show that an individual was subjected to cruel and unusual punishment.  Rather, "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977), quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Because plaintiff does not allege that the FBI agent defendants played any role in his incarceration, other than participating in the investigation and arrest that eventually led to his imprisonment, or that they caused the "unnecessary and wanton infliction of pain" during his incarceration, his Eighth Amendment claims against the FBI agent defendants will be dismissed.

Plaintiff also alleges that defendant Waters violated his Eighth Amendment rights when he provided plaintiff with medical treatment "for a Nerve Issue" that "left [plaintiff] in pain."  2d Am. Compl. ¶¶ 47, 49–50.  He asserts that Waters "did not permit him proper treatment," *id.* ¶ 95, and "did not do what a reasonable, ordinary doctor would do [in] treating" plaintiff, and that his treatment thus "deviated from the appropriate standard of care." *Id.* ¶¶ 95, 98, 106.

It is true that a medical provider's "deliberate indifference to serious medical needs of prisoners" could constitute the "'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104, quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion).  But "[t]his conclusion does not mean . . . that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  "[I]n the medical context, an inadvertent failure to provide adequate medical care

cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105–06. As the Supreme Court explained in *Estelle*:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 106. Thus, with regard to medical treatment, "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff has not alleged any facts from which the Court could conclude that defendant Waters was negligent in providing treatment to plaintiff, let alone that he was deliberately indifferent to plaintiff's medical needs in a manner that would give rise to an Eighth Amendment violation. In fact, the second amended complaint alleges that plaintiff received medical treatment for his nerve issue on two separate occasions during the two weeks between July 15, 2013 and plaintiff's release at the end of July. *See* 2d Am. Compl. ¶¶ 47–50; Min. Entry (July 30, 2013), *United States v. Hampton*, No. 07-cr-0153-TFH-JMF-14 ("Defendant released/release issued."). The fact that the treatment was not completely successful or that plaintiff would have preferred another course of treatment is not enough to show that Waters engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to [plaintiff's] serious medical needs." *Estelle*, 429 U.S. at 106; *see also Banks v. York*, 515 F. Supp. 2d 89, 103 (D.D.C. 2007) ("'It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.' Prisoners must be provided with treatment that is medically adequate, but 'the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment

violation.'"), quoting *Chance v. Armstrong*, 143 F.3d 689, 703 (2d Cir. 1998). And the second amended complaint otherwise contains no factual allegations that would support a finding to that effect. Thus, plaintiff's Eighth Amendment claim against defendant Waters will be dismissed.

**D.    Plaintiff's claims against the Doe defendants will be dismissed pursuant to Rule 12(b)(6).**

Plaintiff also brings claims against two unnamed Doe defendants:  Mary Doe, an unidentified Prince George's County police officer, and John Doe, an unidentified physician's assistant at the BOP facility in Morgantown, West Virginia, where plaintiff was incarcerated. 2d Am. Compl. ¶¶ 17–18, 29–30, 34, 48, 50, 52–54, 96, 98, 106, 118–24. While neither Doe defendant has entered an appearance in this case and therefore has not moved to dismiss any of plaintiff's claims, a "district court may sua sponte dismiss a claim pursuant to Rule 12(b)(6) without notice where it is 'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012), quoting *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990); *see also Baker*, 916 F.2d at 726 (stating that, "in cases where the plaintiff has not advanced a shred of a valid claim," the standard approach of requiring notice to the plaintiff before Rule 12(b)(6) dismissal sua sponte "can only lead to a waste of judicial resources"). Here, for the same reasons as apply to the named federal defendants, the Court finds that plaintiff has failed to plausibly allege that the Doe defendants committed any actionable constitutional violation.

Regarding defendant Mary Doe, the unidentified Prince George's County police officer, plaintiff alleges that she "is responsible for the lives and property, of the Citizens of Prince George's County," and that she was present at and participated in plaintiff's arrest, the search of his home, the handcuffing of his children, and his extradition from Maryland to the District, which plaintiff contends violated the Fourth, Fifth, Sixth, and Fourteenth Amendments. 2d Am. Compl.

¶¶ 18, 26–30, 34, 118–24.  As for defendant John Doe, the unidentified physician's assistant at the Morgantown BOP facility, plaintiff alleges that he "is a Licensed Physician Assistant" who treated plaintiff on July 15, 2013 "for a Nerve Issue," that plaintiff "was left in pain" after receiving treatment, and that defendant John Doe therefore "did not permit [plaintiff] proper treatment" or "do what a reasonable, ordinary Physician Assistant would do [in] treating" plaintiff, in violation of the Eighth Amendment.  *Id.* ¶¶ 17, 47–48, 50, 96, 98, 106.

As with defendants Carter and Waters, it is unlikely that the Court could exercise personal jurisdiction over either Doe defendant, as plaintiff's allegations imply that defendant Mary Doe is a resident of Maryland, defendant John Doe is a resident of West Virginia, and their allegedly unconstitutional conduct was constrained to those jurisdictions, respectively.  *See id.* ¶¶ 17–18, 26–30, 34, 48, 50, 96, 98, 106, 118–24; *see also* D.C. Code § 13-423(a); *GTE New Media Servs.*, 199 F.3d at 1347.  Furthermore, plaintiff has failed to state a plausible constitutional claim against defendant Mary Doe based on his arrest and transfer from Maryland to the District for the same reasons set forth above with regard to the FBI agent defendants.  And he similarly has failed to state a constitutional claim against defendant John Doe in light of the same pleading shortcomings that doomed his Eighth Amendment claims against defendant Waters.  Thus, the Court finds that *sua sponte* dismissal of plaintiff's claims against both Doe defendants is warranted.

**E.    Plaintiff's common law tort claims against the United States will be dismissed pursuant to Rule 12(b)(6).**

As discussed above, the United States has been substituted as the lone defendant with regard to plaintiff's tort claims in Counts I through V.  Even if the Court were to find that the

government has waived its sovereign immunity with regard to those claims, plaintiff fails to state plausible claim against the United States and those counts will be dismissed.[15]

### 1.   Count I:  Malicious Prosecution

In Count I, plaintiff alleges that the government pursued "False and malicious prosecution actions" against him "with a callus [sic] indifference" to him, and he states that his "wrongful conviction . . . was dismissed by the United States Appeal Court."  2d Am. Compl. ¶¶ 58–60.  To state a claim for malicious prosecution, a plaintiff must allege facts sufficient to show "(1) [] the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by the plaintiff as the result of the original action."  *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009), quoting *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980); *accord DiPino v. Davis*, 729 A.2d 354, 373 (Md. 1999).  The second amended complaint does not satisfy these elements.

Plaintiff is correct that the D.C. Circuit vacated his conviction, *see Hampton*, 718 F.3d at 984, and that the indictment against him was ultimately dismissed with prejudice.  Order (Oct. 16, 2013) [Dkt. # 834], *United States v. Hampton*, No. 07-cr-153-TFH-JMF-14.  The conviction was overturned because the D.C. Circuit found that the district court had improperly permitted an FBI administrative case agent to testify as a lay witness about his understandings of recorded conversation without providing the jury a way to verify the agent's testimony or reach its own independent conclusions.  *Hampton*, 718 F.3d at 982–84.  But even if plaintiff has shown that the

---

15      FTCA claims must be determined "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *see also Richards v. United States*, 369 U.S. 1, 6–7 (1962); *Raflo v. United States*, 157 F. Supp. 2d 1, 8 (D.D.C. 2001).  As discussed above, it is not clear from the allegations of the second amended complaint where the events giving rise to some of plaintiff's tort claims took place, and so it is not immediately apparent whether District of Columbia or Maryland law governs.  But because the Court finds that plaintiff has failed to state a claim under the laws of either jurisdiction, the Court need not determine which law applies.

underlying suit against him terminated in his favor, he has not pleaded any facts – as distinguished from unsupported, conclusory allegations – from which this Court could conclude that the criminal case against him was brought with malice or without probable cause.

"Malice" means that "the criminal proceeding was for some purpose 'other than . . . bringing an offender to justice." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 993 (D.C. Cir. 2014), quoting *DeWitt v. District of Columbia*, 43 A.3d 291, 296 (D.C. 2012). Proof of malice may be established from "the existence of a willful, wanton, reckless or oppressive disregard for the rights of the plaintiff." *Tyler v. Cent. Charge Serv., Inc.*, 444 A.2d 965, 969 (D.C. 1982). Plaintiff asserts that defendants engaged in "false and malicious prosecution actions" "for an improper purpose without probable cause" and "with a callus [sic] indifference to Plaintiff." 2d Am. Compl. ¶¶ 43, 58–59. But he provides no facts to support these claims, and the Court cannot infer from the sparse allegations of the second amended complaint that the charges against plaintiff were brought for any purpose other than bringing a criminal defendant to justice. Far more is required to state a plausible claim that government agents acted with malice in making an arrest or initiating a prosecution.

It is, of course, "axiomatic that malice may be presumed from the lack of probable cause." *Amobi*, 755 F.3d at 993, citing *Viner v. Friedman*, 33 A.2d 631, 632 (D.C. 1943). "The issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the 'underlying suit.'" *Pitt v. District of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007); *see also Dellums v. Powell*, 566 F.2d 216, 220 (D.C. Cir. 1977) (noting that in the criminal context, "the critical event triggering liability for malicious prosecution is the filing of an information"). Plaintiff was indicted and arrested based upon showings of probable cause, and he was convicted by a jury applying the higher "beyond a reasonable doubt" standard.

While his conviction was overturned, it was not due to the insufficiency of the evidence against him.   Other than his unadorned allegation that the investigation against him was conducted "without probable cause," 2d Am. Compl. ¶ 43, plaintiff has not offered any facts from which this Court could conclude that the criminal indictment against him was obtained without probable cause or that the case against him was "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Amobi*, 755 F.3d at 992, quoting *Moore v. Hartman*, 571 F.3d 62, 67 (D.C. Cir. 2009).   Thus, plaintiff has failed to state a plausible claim for malicious prosecution, and Count I will be dismissed pursuant to Rule 12(b)(6).

### 2.     Count II:  Conspiracy to Abuse Process

Plaintiff's Count II claim for conspiracy to abuse process consists solely of his allegation that the FBI agent defendants "conspired to engage in a pattern of filing criminal charges against [him] . . . for the purpose of creating false narratives" about plaintiff that harmed his business interests and his family, and that "[t]hese filings have been done with malice and without probable cause." 2d Am. Compl. ¶ 61.   This conclusion is insufficient to state a plausible claim under Rule 12(b)(6).

"The essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996), quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992); *see also Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (Md. Ct. Spec. App. 2004).   "The critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law, and whether the suit was instituted to achieve a result not regularly or legally obtainable." *Morowitz*, 423 A.2d at 198;

*accord Campbell*, 852 A.2d at 1044 ("[S]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required."), quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997).

Plaintiff alleges that the criminal charges against him were filed "for the purpose of creating false narratives about Plaintiff," 2d Am. Compl. ¶ 61, but he has not alleged that the charges were filed "to pressure him to take some action or not take some action; he merely claims that the criminal charges were unfounded and prosecuted with malice." *Creecy v. District of Columbia*, No. 10-841 (CKK), 2011 WL 1195780, at *7 (D.D.C. Mar. 31, 2011). "The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance." *Morowitz*, 423 A.2d at 198, quoting *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959); *accord Campbell*, 852 A.2d at 1044. "Thus, in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Morowitz*, 423 A.2d at 198, citing *Hall*, 147 A.2d at 868.

Plaintiff has failed to allege any facts that would support such a finding here, and instead, it appears that the government "instituted the criminal charge for precisely the purpose for which it was intended: establishing that [plaintiff] was guilty of a criminal offense." *See Scott*, 101 F.3d at 756. And even if the Court credits plaintiff's unsupported allegation that the charges against him were brought to damage his reputation, "the fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process." *Id.* at 755. In other words, "the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm." *Id.*, quoting Restatement (Second) of Torts § 682 cmt. b (1977). Plaintiff

has therefore failed to state a claim for abuse of process, and he also has not stated a claim for

conspiracy to abuse process, *see Grimes v. D.C. Bus. Decisions Info. Inc.*, 89 A.3d 107, 115 (D.C.

2014) ("Civil conspiracy is not an independent tort but only a means for establishing vicarious

liability for an underlying tort."), quoting *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334

(D.C. 2007), and Count II will be dismissed.

### 3.    Count III:  False Light Invasion of Privacy

In Count III, plaintiff alleges that the FBI agent defendants "falsely depicted Plaintiff as

Drug Dealer and Drug Trafficker," that they "were each complicit in and responsible for casting

plaintiff in a false light" that "would be considered highly offensive to a reasonable person," and

that they "continued to do so week after week, article after article were printed in the Washington

Post News Paper."  2d Am. Compl. ¶¶ 63–66.

To state a claim for false light invasion of privacy, plaintiff must allege facts sufficient to

show that the FBI agent defendants' actions "created '(1) publicity (2) about a false statement,

representation or imputation (3) understood to be of and concerning the plaintiff[], and (4) which

places the plaintiff[] in a false light that would be offensive to a reasonable person."  *Parnigoni v.*

*St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 19 (D.D.C. 2010), quoting *Washburn v. Lavoie,*

437 F.3d 84, 88 n.3 (D.C. Cir. 2006); *see also Furman v. Sheppard*, 744 A.2d 583, 587 (Md. Ct.

Spec. App. 2000).  Plaintiff must also show that "the actor had knowledge of or acted in reckless

disregard as to the falsity of the publicized matter and the false light in which the other would be

placed."  *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001); *accord Furman*, 744

A.2d at 587.

Plaintiff's claim fails at the first step, because he does not allege that the FBI agent

defendants did anything to generate the publicity that followed plaintiff's arrest or his conviction,

other than the fact that they undertook the investigation itself and arrested him. Plaintiff's indictment, arrest, and conviction were matters of public record, and he does not allege that the FBI agent defendants communicated the facts of their investigation or plaintiff's arrest and conviction to anyone, let alone to "the public at large." *See Bean v. Gutierrez*, 980 A.2d 1090, 1095 (D.C. 2009) ("[T]he matter is made public[] by communicating it to the public at large, or to so many persons that the matter must be regarded as *substantially certain to become one of public knowledge*."), quoting *Steinbuch v. Cutler*, 463 F. Supp. 2d 1, 3 (D.D.C. 2006). Thus, plaintiff has failed to state a plausible claim for false light invasion of privacy.

Furthermore, even if the FBI agent defendants had disclosed the existence of the investigation to the media, it is far from clear that the publication of the fact of the investigation into plaintiff or the criminal charges against him would be grounds for a false light tort in any event. *See Kugel*, 947 F.2d at 1508 n.3 (stating that a false light claim based on "the mere truthful disclosure to the Associated Press that an investigation [into the plaintiff] is ongoing" "is indisputably 'novel'"), quoting *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1078 (D.C. Cir. 1984); *see also Ramos v. Hartley*, 2015 WL 5821781 (Md. Ct. Spec. App. Sept. 17, 2015) (affirming trial court's finding that the plaintiff failed to state a defamation or false light invasion of privacy claim based on newspaper article stating that the plaintiff had "pleaded guilty to a charge of criminal harassment" because the article "all came from a public record" and "was the result of a criminal conviction," which "cannot give rise to a defamation suit"). Thus, plaintiff's invasion of privacy claim in Count III will be dismissed.

### 4.   Count IV:  Infliction of Emotional Distress

In Count IV, plaintiff alleges that the FBI agent defendants caused him "infliction of emotional distress" "by engaging in a multi-year course of conduct of malicious prosecution,

invasion of privacy, false imprisonment, and conspiracy," and that they "have said that they want to destroy Plaintiff, to ruin his family and business and to see him imprisoned."  2d Am. Compl. ¶¶ 71–72; *see also id.* ¶ 45 (stating that the FBI agent defendants "caused intentional infliction of emotional distress" to plaintiff).

    To state a plausible claim for the intentional infliction of emotional distress, plaintiff "must allege '(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Parnigoni*, 681 F. Supp. 2d at 23, quoting *Khan v. Parsons Global Servs. Ltd.*, 521 F.3d 421, 428 (D.C. Cir. 2008); *accord Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000).  "The conduct alleged must be so outrageous that it goes 'beyond all bounds of decency' and is 'regarded as atrocious, and utterly intolerable in a civilized community.'"  *Parnigoni*, 681 F. Supp. 2d at 23, citing *Lyles v. Micenko,* 404 F. Supp. 2d 182, 187 (D.D.C. 2005); *see also Browning*, 292 F.3d at 248 (holding that the tort of intentional infliction of emotional distress is "reserved for truly outrageous behavior").  Moreover, the emotional distress suffered by the plaintiff must be "of so acute a nature that harmful physical consequences might be not unlikely to result."  *G'Sell v. Carven*, 724 F. Supp. 2d 101, 110 (D.D.C. 2010), quoting *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007).

    Plaintiff has failed to allege the sort of outrageous conduct that would give rise to a claim for intentional infliction of emotional distress, especially given the absence of facts that would support an inference that the FBI agent defendants acted with malice, and the findings above about the probable cause for the indictment and plaintiff's arrest.  Moreover, Count IV must be dismissed because plaintiff has failed to allege that the emotional distress he suffered as a result of the FBI agent defendants' alleged misconduct was sufficiently severe.  In support of his emotional distress claim, plaintiff states only that the FBI agent defendants' actions "have caused [him] infliction of

emotional distress." 2d Am. Compl. ¶ 71.  Elsewhere in the second amended complaint, plaintiff

states that "[t]he restraint of [his] liberty caused . . . inconvenience and discomfort, loss of time,

mental suffering, injury to reputation, distress and anguish, humiliation, public ridicule, and public

disgrace." *Id.* ¶ 42.  These allegations of injury do not rise to the level of severity required to state

a plausible claim for the intentional infliction of emotional distress.  *See Futrell v. Dep't of Labor*

*Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003) ("'[M]ental anguish' and 'stress' would not

rise to the level of the 'severe emotional distress' required by the case law."), citing *Sere v. Group*

*Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982); *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856,

861–62 (D.C. 1999) (observing that "angst, sleeplessness, and humiliation" is not "greater

[discomfort] than a reasonable person could be expected to tolerate"); *see also Manikhi*, 758 A.2d

at 114–15 (affirming dismissal of infliction of emotional distress claim where the complaint failed

to "state with reasonable certainty the nature, intensity or duration of the alleged emotional

injury").  Thus, Count IV will be dismissed.

### 5.    Count V:  False Imprisonment

In Count V, plaintiff asserts that he was subjected to false imprisonment when he was

detained "in a bounded area without justification and consent" by the use of "physical barriers"

and "physical force" by the FBI agent defendants during his arrest.  2d Am. Compl. ¶¶ 74–77.[16]

To state a claim for false imprisonment, plaintiff must show that he was (1) "detained or

restrained . . . against [his] will within the boundaries fixed by [the FBI agent defendants], and

---

16    As discussed above, the Court presumes that plaintiff's false imprisonment claim is based upon the events of his arrest, and not on his incarceration in West Virginia, because "false imprisonment consists of detention without legal process," and thus "ends once the victim becomes held *pursuant to such process* – when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389.

(2) the unlawfulness of the restraint." *Cotton v. District of Columbia*, 541 F. Supp. 2d 195, 205 (D.D.C. 2008), citing *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 44 (D.D.C. 2007); *see also Ashton v. Brown*, 660 A.2d 447, 471 (Md. 1995).  "The court's inquiry in a false arrest [or false imprisonment] claim centers on 'whether the officer was justified in arresting the plaintiff.'"[17] *Cotton*, 541 F. Supp. 2d at 205, citing *Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998); *accord Ashton*, 660 A.2d at 471.  As discussed above, plaintiff was arrested pursuant to a warrant issued by a Magistrate Judge.  "Thus, the plaintiff cannot substantiate [his] claims that [he] was falsely arrested or imprisoned."  *See Cotton*, 541 F. Supp. 2d at 205; *accord Ashton*, 660 A.2d at 472 ("An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the arresting police officer, the warrant is in fact improper.").  Thus, Count V will be dismissed.

**F.      Count XV will be dismissed for failure to exhaust administrative remedies.**

In Count XV, plaintiff seeks to have to have the federal record of his arrest and detention expunged.  2d Am. Compl. ¶¶ 126–29.  Specifically, plaintiff claims that "[t]he government may not retain records of arrests or detention where the maintenance of such records would be fundamentally unfair, such as where the arrest or detention was illegal or unconstitutional," as he claims his arrest and detention were.  *Id.* ¶¶ 128–29.

For the reasons set forth above, the Court finds that plaintiff has failed to show that either his arrest or his detention were unconstitutional or otherwise illegal.  The fact that his conviction was vacated by the D.C. Circuit based on an evidentiary error sheds no light on that issue.

---

17      "In the District of Columbia, the torts of false arrest and false imprisonment are indistinguishable."  *Joyce v. United States*, 795 F. Supp. 1, 4 (D.D.C. 1992), *aff'd*, 986 F.2d 546 (D.C. Cir. 1993), citing *Shaw v. May Dept. Stores, Co.*, 268 A.2d 607 (D.C. 1970).

And in any event, plaintiff has not alleged that he exhausted his administrative remedies with regard to his expungement claim.[18]  He has available to him the record correction procedures set forth in 28 C.F.R. § 16.34, and he does not contend in the second amended complaint or his opposition that he attempted to avail himself of these procedures.  *See* 28 C.F.R. § 16.34 ("If, after reviewing his/her identification record, the subject thereof believes that it is incorrect or incomplete in any respect and wishes changes, corrections or updating of the alleged deficiency, he/she should make application directly to the agency which contributed the questioned information.").  "Whatever the issue as to the legality of an arrest record, an action for its expungement cannot be maintained unless administrative remedies are first exhausted."  *Menard v. Mitchell*, 328 F. Supp. 718, 723–24 (D.D.C. 1971).  Because plaintiff has failed to allege that he exhausted his administrative remedies with regard to his expungement request, and he therefore has failed to state a viable claim for the expungement of his records, Count XV will be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For all the reasons discussed above, which cover every claim against every federal defendant and the Doe defendants, the Court finds that the dismissal of plaintiff's claims is warranted pursuant to Federal Rule of Civil Procedure 12.  Thus, the federal defendants' motion

---

18      As with many of defendants' other arguments in favor of dismissal, plaintiff fails to address the administrative exhaustion issue as it pertains to his expungement action in his opposition, and he thus has conceded this point.  *Hopkins*, 284 F. Supp. 2d at 25 (D.D.C. 2003).  Plaintiff does explain at length in his opposition that he has exhausted his administrative remedies insofar as he was required to present his FTCA claims to the FBI and BOP, *see* Pl.'s Opp. at 19–22, ; *see also* 2d Am. Compl. ¶¶ 4–5 (stating that plaintiff presented his claims to the FBI and BOP on January 27, 2014, "[p]ursuant to 28 U.S.C. § 2675(a)"), but that has no bearing on the exhaustion of his remedies for this expungement action.

will be granted, the Doe defendants will also be dismissed, and this case will be dismissed in its entirety.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 8, 2016